UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDA MOISE,

      Plaintiff,

v.                                                          Case No. 2:20-cv-102-JLB-NPM

THE SCHOOL BOARD OF
COLLIER COUNTY,

      Defendant.

_____

**REPORT AND RECOMMENDATION**

In this Florida Whistleblower Act ("FWA") case, Plaintiff Linda Moise seeks

an order compelling the School Board of Collier County to temporarily reinstate her

employment pending the outcome of this matter. (Doc. 16).[1] In support, she relies

on Section 112.3187(9)(f) of the FWA, which requires the temporary reinstatement

of an FWA whistleblower to his or her former position, or to an equivalent position,

pending the final outcome of the complaint upon a preliminary showing that (1) the

employee was discharged, (2) the discharge was in retaliation for making a protected

disclosure, (3) the disclosure was not made in bad faith or for a wrongful purpose,

and (4) the disclosure did not occur after the initiation of a personnel action against

---

[1] While it would be fair to read Moise's motion as seeking reinstatement to her former position as
an assistant principal at Corkscrew Middle School rather than any equivalent position, her
motion's vague request for reinstatement could be read either way.

the employee concerning a documented violation of a disciplinary standard or performance deficiency. But Moise was not "discharged" within the meaning of the FWA, and the termination of her employment was due to her refusal to continue working in her former position or in a variety of other roles within the district. As Moise concedes in both her complaint and verified motion, her employment was terminated because she "insisted on a transfer" to an assistant principal position at a different school and the Defendant refused or was unable to comply. (Doc. 1, ¶¶ 21-22; Doc. 16, p. 5). Consequently, Plaintiff's request for temporary reinstatement should be denied.

## I.    Factual and Procedural Background

Moise began her employment on August 8, 2019 as an assistant principal assigned to Corkscrew Middle School. (Doc. 16, pp. 1, 3; Doc. 21, p. 1). As an assistant principal, she oversaw student disciplinary issues and served as a member of the school's threat assessment team. (Doc. 21-1, p. 2). Following the 2018 Parkland school shooting, the Florida legislature adopted the Marjorie Stoneman Douglas High School Public Safety Act, which requires school districts to adopt a policy for the establishment of threat assessment teams at each school. S.B. 7026, ch. 2018-3, § 24, 2018 Leg., 2d Reg. Sess. (Fla. 2018) (amending Fla. Stat. Ann. § 1006.07).

On October 30, 2019, a student in the school's Intensive Behavioral Intervention ("IBI") unit attacked Moise and a co-worker. The student kicked Moise in her shins and knees with great force and hit the co-worker in the face several times. He continued "to try and come after" Moise and yelled "I'm going to kill you." (Doc. 16, p. 4; Doc. 21, p. 3). The attack allegedly left her unable to work for two days and required physical rehabilitation. (Doc. 16, p. 4).

The day after the attack, Moise emailed Corkscrew Middle's principal, Ronna Smith, and other members of the threat assessment team.[2] (Doc. 16, p. 4; Doc. 21, p. 3; Doc. 21-2, p. 6). As referenced in the email, Moise decided to move forward with pressing charges against the student. She also told both youth relations deputy Daniel Michalski[3] and principal Smith to let her know if they needed anything from her, and she noted that she had emailed a statement to add to the incident report. Moise also explained that the threat assessment was still open for the student under his "SSS tab" and it was "99% filled out. Just need to submit but I don't know if we need to add anything there." (Doc. 21-1, p. 8).

On November 3, 2019, Moise emailed principal Smith, assistant principal Peacock, YRD Michalski, and Stephanie Lamb, seeking an update on the status of

---

[2] Plaintiff's October 31, 2019 email was sent to youth relations deputy Daniel Michalski, principal Ronna Smith, assistant principal Rania Pierre-Peacock, and Lorraine Mike. (Doc. 21-1, p. 8).

[3] The YRD is a law enforcement officer and an employee of the Collier County Sheriff's Office ("CCSO") who is assigned to Corkscrew Middle. (Doc. 21, p.4 n.3).

the student and when and if he would return to school. Moise expressed her belief that the student was a danger to other students and staff members. She further stated that she did not feel safe around the student given the events that occurred during the prior week. (Doc. 21-1, p. 9). Moise alleges that in response to her November 3, 2019 email, principal Smith verbally warned her that she "better be more careful" about what she puts in writing. (Doc. 16, p. 4).

Despite her email, Moise returned to work on Monday, November 4, 2019, and continued to work at Corkscrew Middle until November 20, 2019. (Doc. 21-2, p. 2). On November 20, 2019, Moise wrote another email to principal Smith and others,[4] stating the following:

> In the process of completing the threat assessment for [the student] we determined that the threat was Serious Substantive where a plan needed to be in place to keep me safe from the student because of the history and the nature of the threat. In speaking with Dr. Dawes[5] about a plan she feels that I should not be part of the Threat Assessment Team for this student because I am the victim that the threat was made against. She says that another member of the administration team needs to complete the threat assessment and a plan needs to be put in place for my safety. Any future disciplinary issues with this student should be handled by another administrator due to the conflict. As I stated in a previous email, I do not feel safe around this student. Please advise.
>
> (Doc. 21-1, p. 10).

---

[4] The exhibit shows Plaintiff's greeting as "Hello all," but it does not show to whom the email was sent; it only shows a reply email from principal Smith. (Doc. 21-1, p. 10).

[5] Dr. Dawes is the School Intervention Therapist. (Doc. 21, p. 4).

Principal Smith responded just hours later agreeing with Moise's recommendation, noting it "is no problem." Principal Smith also wrote that assistant principal Peacock should be the assigned administrator on the student's threat assessment team. Smith directed Moise to work with Peacock to complete the threat assessment and follow-up paperwork. Also, Smith told Moise to keep discussions "about administrators and who will handle which students … initially between us" prior to disclosing to other individuals involved with the student. (Doc. 21-1, p. 10). In concluding her email, Smith stated there would be days when she and Peacock would not be in the building and that Moise would have to respond to disciplinary issues involving the student, but that "maybe the [YRD] can come with you." (Doc. 21-1, p. 10).

After this exchange of emails on November 20, 2019, Moise never returned to work. (Doc. 21-1, p. 7; Doc. 21-2, p. 3). As she would subsequently claim in a statement to the district, upon receiving the news that she might have to interact with the student, the thought of being potentially attacked again increased her anxiety, and she needed to consider her own well-being and safety. (Doc. 21-1, pp. 6-7).

On November 21, 2019, Moise texted her supervisor informing her that she had a migraine and would not be at work. (Doc. 21-1, p. 6). She claims her doctor filled out the school district's leave request sheet and "faxed it over to benefits" with a Physicians Regional Medical Group cover letter. (Doc. 21-1, p. 6). The next day,

principal Smith and assistant principal Peacock called Moise at her home and interviewed her about another verbal threat by the student. (Doc. 21-1, p. 7; Doc. 21-2, p. 3). Moise claims they made no mention of a safety plan that would protect her when she might be the only administrator in the building. (Doc. 21-1, p. 7). At some point thereafter, Smith and Peacock completed a second threat assessment concerning the student. (Doc. 21-2, p. 3).

In a written statement to the school district dated December 5, 2019, Moise stated the following:

> Some of the events following the initial attack could have been prevented if my supervisor would have put the appropriate safety measure in place to keep me safe from that student. At this point I do not feel that I can continue to serve under the leadership of someone who has a blatant disregard for the safety and security of not only myself but of other staff members and students. The thought of walking back into [Corkscrew Middle School] where there is a student that was physically violent towards me creates fear and anxiety which will prevent me from doing my job effectively at CMS. Therefore, I am requesting a transfer to another school or position within the district after my physician sees it fit for me to return per her original statement.

(Doc. 21-1, pp. 2, 7).

Moise discussed this statement and her request for a transfer with Valerie Wenrich, the executive director of human resources. (Doc. 21-1, p. 3). Wenrich conveyed several options to Moise. She was free to continue working as the assistant principal at Corkscrew Middle "with accommodations for lifting and standing per worker's compensation and the accommodation plan put in place by the administrative team for working with the student for whom you are concerned."

(Doc. 21-1, p. 13). Or, she could work in a non-instructional position in a school or the district office, or as a middle or elementary school teacher. (Doc. 21-1, pp. 12-13). Moise claims there were assistant principal positions available with other schools in the district at the time. (Doc. 16, p. 5). But as memorialized in Wenrich's December 9, 2019 email to Moise, the district asserts there were "no vacant administrative positions in any schools." (Doc. 21, p. 6; Doc. 21-1, p. 13).

Wenrich asked Moise to confirm her intent to return to work and the location or position she selected, or else Moise would be expected to return to her assistant principal position at Corkscrew Middle with accommodations the following day, December 10, 2019. (Doc. 21-1, p. 13). Plaintiff did not reply to Wenrich's email and did not return to work. (Doc. 21, p. 6).

On December 17, 2019, Wenrich emailed Moise and directed her once again to return to work as an assistant principal with Corkscrew Middle by December 18. (Doc. 21-1, p. 14). She added that a doctor's note Moise had previously provided did not describe any limiting condition that prevented Moise from returning to work. Plaintiff elected not to return to work—not as the assistant principal with Corkscrew Middle and not in any of the other capacities offered by the district—and the employment relationship terminated as a result. (Doc. 16, p. 5; Doc. 21, p. 7; Doc. 21-1, p. 4).

On February 13, 2020, Plaintiff initiated the instant lawsuit. (Doc. 1). Plaintiff's Complaint alleges violations of the federal Rehabilitation Act for disability discrimination, as well as violations of Florida's worker's compensation statute and the FWA for unlawful retaliation. (*Id.*)

## II.    Temporary Reinstatement under the FWA

The FWA prohibits state and local agencies and their independent contractors from taking adverse action against certain employees and other persons who disclose to an appropriate agency or agency official:

(a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.

[or][6]

(b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

Fla. Stat. § 112.3187(5).

Included in the FWA is a mandatory relief provision for employee plaintiffs

---

[6] While Section 112.3187(5) does not include "or" or "and" between subsections (a) and (b), courts have interpreted this provision as requiring either (a) *or* (b). *E.g.*, *Vickaryous v. Sch. Bd. of Collier Cty.*, No. 2:18-cv-315-FtM-99MRM, 2019 WL 949303, *3 (M.D. Fla. Feb. 27, 2019) (granting temporary reinstatement and finding that plaintiff made a showing under subsection (b)); *Griffin v. Sun N' Lake of Sebring Improvement Dist.*, No. 2:16-cv-14062, 2017 WL 5202683, *2-4 (S.D. Fla. Jan. 20, 2017) (granting temporary reinstatement and finding plaintiff made a showing under subsection (b) but not subsection (a)); *King v. State of Fla.*, 650 F. Supp. 2d 1157, 1162 (N.D. Fla. 2009) (posing subsections (a) and (b) as alternative required showings).

that provides in relevant part:

> **(9) Relief.**--In any action brought under this section, the relief must include the following:
>
> (f) Temporary reinstatement to the employee's former position or to an equivalent position, pending the final outcome on the complaint, if an employee complains of being discharged in retaliation for a protected disclosure and if a court of competent jurisdiction or the Florida Commission on Human Relations, as applicable under [section] 112.31895, determines that the disclosure was not made in bad faith or for a wrongful purpose or occurred after an agency's initiation of a personnel action against the employee which includes documentation of the employee's violation of a disciplinary standard or performance deficiency.

Fla. Stat. Ann. § 112.3187(9)(f).

Thus, as mentioned above, an employee whistleblower pursuing an FWA claim is entitled to temporary reinstatement to his or her former position, or to an equivalent position, pending the final outcome of the claim upon a showing that (1) the employee was discharged, (2) the discharge was in retaliation for making a protected disclosure, (3) the disclosure was not made in bad faith or for a wrongful purpose, and (4) the disclosure did not occur after the initiation of a personnel action against the employee concerning a documented violation of a disciplinary standard or performance deficiency. *Id*.

Because this concerns a preliminary question, the plaintiff need only make an initial showing; the court's findings are only for the purposes of whether temporary reinstatement is warranted and are not binding as to the merits of the FWA claim. *See Broward Cty. Sheriff's Office v. Hamby*, — So. 3d —, 2020 WL 3982832, *3

n.2 (Fla. 4th DCA July 15, 2020); *Pritz v. Sch. Bd. of Hernando Cty.*, 260 So. 3d 1117 (Fla. 5th DCA 2018); *Competelli v. City of Belleair Bluffs*, 113 So. 3d 92, 94 n.1 (Fla. 2d DCA 2013); *Vickaryous v. Sch. Bd. of Collier Cty.*, No. 2:18-cv-315-FtM-99MRM, 2019 WL 949303, *3 n.3 (M.D. Fla. Feb. 27, 2019). As a remedial statute, any ambiguity in the FWA is to be construed "liberally in favor of granting access to the remedy." *Irven v. Dep't of Health & Rehab. Servs.*, 790 So. 2d 403, 405-06 (Fla. 2001) (citing and quoting *Martin Cty. v. Edenfield*, 609 So. 2d 27, 29 (Fla. 1992)). But, "in the absence of ambiguity the plain meaning of the statute prevails." *Edenfield*, 609 So. 2d at 29.

## III.   The District Did Not Discharge Moise in Retaliation for Making a Protected Disclosure

Assuming for purposes of this limited inquiry that Moise made a protected disclosure, she was neither "discharged" within the meaning of the FWA's reinstatement provision, nor was her discharge retaliatory in nature. The term "discharged" is unambiguous, and its plain meaning must prevail. *Metro. Dade Cty. v. Milton*, 707 So. 2d 913, 914-915 (Fla. 3rd DCA 1998). Thus, a demotion, transfer, suspension, or any other adverse personnel action short of an outright dismissal of employment falls short of the statutory grounds required for "the extraordinary temporary relief" of reinstatement. *Id.* at 915-916 (holding that a major and "grievous" demotion with a concomitant reduction in salary and benefits could not satisfy the statutory standard).

Here, the school district repeatedly asked Moise to continue working in her former position and even offered her alternative positions as other options. Her refusal to continue working in her position or accept the proposed transfers does not amount to being discharged within the meaning of the FWA's reinstatement provision. *See Luster v. W. Palm Beach Hous. Auth.*, 801 So. 2d 122, 123 (Fla. 4th DCA 2001) (holding that an employee is not discharged for purposes of the FWA's reinstatement provision when she refuses to accept a transfer to another position); *see also Utterback v. Sch. Bd. of Palm Beach County*, 219 So. 3d 940 (Fla. 4th DCA 2017) (same).

Nor can it be said for purposes of this temporary reinstatement inquiry that the termination of Moise's employment was retaliatory in nature. Instead, the termination appears—at least at this stage—to be the result of her "voluntary choice to refuse continued employment" in the face of the district's refusal or inability to satisfy Moise's demand that she be transferred to an assistant principal position at a different school. *Luster*, 801 So. 2d at 123. Thus, regardless of whether Moise made a protected disclosure and did so in good faith, she is not entitled to the extraordinary remedy of temporary reinstatement.

## IV. Conclusion

Without any prejudice to her ability to seek other relief in this matter, Moise's request for temporary reinstatement should be rejected for failing to show that she

was "discharged" within the meaning of the FWA's temporary reinstatement provision, and that the termination of her employment was retaliatory in nature and not simply the result of her voluntary choice. Because either conclusion alone and without more is sufficient to dispose of the question presented—and to avoid unduly prejudging the merits of the parties' claims and defenses—it seems prudence counsels in favor of pretermitting any discussion about whether Moise made a protected disclosure, the disclosure was not made in bad faith or for a wrongful purpose, and the disclosure did not occur after the initiation of a personnel action against the employee concerning a documented violation of a disciplinary standard or performance deficiency.

Accordingly, it is respectfully recommended that Plaintiff's Verified Motion for Temporary Reinstatement Under F.S. §112.3187(9)(f) (Doc. 16) be **DENIED**.

Reported in Fort Myers, Florida on February 3, 2021.

_Nicholas P. Mizell_
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**