UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LINDA MOISE,

    Plaintiff,

v.                                                   Case No. 2:20-cv-102-JLB-NPM

THE SCHOOL BOARD OF COLLIER
COUNTY,

    Defendant.
_____/

## ORDER

Plaintiff Linda Moise is a former assistant principal at Corkscrew Middle School in Collier County, Florida. She sues the School Board of Collier County ("School Board") because, among other things, she claims that she was discharged from her job as retaliation for whistleblowing. Ms. Moise contends that, as a preliminary remedy, she is entitled to temporary reinstatement under the Florida Whistle-blower's Act ("FWA"). Fla. Stat § 112.3187.

After reviewing Ms. Moise's motion for temporary reinstatement and the School Board's opposition, the Magistrate Judge entered a Report and Recommendation ("R&R"), opining that Ms. Moise's motion should be denied because she was not "discharged" within the meaning of the FWA. (Docs. 16, 21, 23.) Ms. Moise filed an objection to the R&R, claiming that the Magistrate Judge's ruling would saddle her with too high a burden of proof at this stage of the litigation. (Doc. 24.)

After carefully reviewing the R&R, Ms. Moise's objections, the underlying motion, and the School Board's responses, the Court agrees with the Magistrate Judge that Ms. Moise's motion for temporary reinstatement should be denied. But the Court reaches this conclusion on different grounds: Ms. Moise has not sufficiently demonstrated that she made any whistleblower communications protected under the FWA. Accordingly, the R&R (Doc. 23) is **ADOPTED IN PART**, and Ms. Moise's motion (Doc. 16) is **DENIED**.

## BACKGROUND

The R&R excellently summarizes the facts of this case, and its restatement of the facts is fully incorporated into this Order by reference. Nevertheless, for purposes of the readers' convenience, some facts bear repeating.

Ms. Moise began working at Corkscrew Middle School in August 2019. (Doc. 23 at 2.) On Wednesday, October 30, 2019, a student with behavioral issues kicked Ms. Moise in the shins and knees and threated to kill her. (Id. at 3.) The next day (Thursday), Ms. Moise stayed home from work to recuperate and wrote an email to Principal Ronna Smith and other school employees. (Id.) In that email ("October 31 Email"), Ms. Moise informed the recipients that she would be pressing charges against the student. (Doc. 21-1, Ex. 2.) She also stated, "[T]he threat assessment[1] is still open for the student . . . . It's 99% filled out. Just need to submit but I don't know if we need to add anything there." (Id.) On November 3 (Sunday), Ms. Moise

---

[1] Section 1006.07, Florida Statutes, as amended by the Marjorie Stoneman Douglas High School Public Safety Act (Ch. 2018-3, § 24, Laws of Fla.), requires each school district to adopt policies for the establishment of threat assessment teams to assess potentially dangerous students.

2

sent another email ("November 3 Email") to Principal Smith and others, in which she stated that she was not sure "what the update is" on the problematic student or "if/when he would return to school," but she would like to express her opinion that this student was a danger to staff and other students, and she did not feel safe around him. (Id., Ex. 3.) She concluded the email by saying, "Again, I am unsure of what the plan is for the student since I've been gone." (Id.)

Ms. Moise returned to work on the following Monday (November 4) and continued to work at Corkscrew Middle School until November 20, 2019. (Doc. 23 at 4.) On that day—when Ms. Moise was the only administrator in the building—a "behavioral specialist" informed Ms. Moise that the same problematic student said he was "going to kill himself, kill [Ms. Moise], and kick [her] in the legs again like he did before." (Doc. 21-1, Ex. 1.) Later that day, Ms. Moise emailed Principal Smith and others regarding the second threat assessment for the student and stated that "[a]ny disciplinary issues with this student should be handled by another administrator." (Id., Ex. 4.) Principal Smith responded, "There will . . . be instances like today that both Mrs. Peacock and I will be out of the building. I believe in that instance you will have to respond as the [assistant principal], but I believe in knowing the situation that maybe the deputy can some with you." (Id.)

The next morning, on November 21, Ms. Moise texted her supervisor that she would not be at work because she had a migraine. (Doc. 21-1, Ex. 1.) She then claims to have gone to her doctor, asked him to fill out the school district's leave request sheet, and "faxed it over to benefits." (Id.) Her leave was never approved;

3

the parties apparently disputed whether Ms. Moise could (or needed to) take any such leave. (Id.) On December 5, 2019, Ms. Moise provided the school district with a two-page Board Policy Narrative (a document she produced according to School Board Policy 3470, which governs dispute resolution). The Narrative is essentially a timeline of the events discussed earlier, and many of the entries in the timeline relate to Ms. Moise's efforts to take medical leave. The concluding paragraph in the Narrative provides, in pertinent part:

> I feel as if I have been bullied, harassed, and retaliated against. All I have done since the initial incident occurred was voice my concern for the safety of the staff, students, and myself from a student who has demonstrated that he is capable of hurting others. When nothing was done, I continued to show up and do my job until a threat was made against me. At that point I had no choice but to think about my well-being and safety since no one else seemed to care. Even after that I have been met with road blocks at every turn in trying to take some time to take care of my mental health. . . . <u>Some of the events following the initial attack could have been prevented if my supervisor would have put the appropriate safety measure in place to keep me from that student</u>. At this point I do not feel that I can continue to serve under the leadership of someone who has blatant disregard for the safety and security of not only myself but of other staff members and students. The thought of walking back into CMS where there is a student that was physically violent towards me creates fear and anxiety which will prevent me from doing my job effectively at CMS. <u>Therefore, I am requesting a transfer to another school or position within the district after my physician sees it fit for me to return per her original statement</u>.

(Id.) (emphasis added.)

Ms. Moise discussed her request for a transfer with the school district's executive director of human resources, who informed her that there were "no vacant administrative positions in any schools." (Doc. 21-1, Ex. 5.) The alternative positions available to Ms. Moise were essentially demotions. Conversely, Ms. Moise claims there were "several" other assistant principal positions available in other

4

school districts at the time. (Doc. 16 at 5.) The executive director of human resources informed Ms. Moise that if she did not accept an available alternative position, she would be expected to return to work. But she never did, and her probationary employment contract was consequently terminated on December 18, 2019. (Doc. 21-1 at ¶ 23.) Two months later, Ms. Moise filed the complaint in this action and subsequently moved for temporary reinstatement. (Docs. 1, 16.) Count II of her complaint sets forth a cause of action under the FWA. (Doc. 1 at 7–9.)

## Discussion

**I.   Ms. Moise has not made a sufficient evidentiary showing that she made any protected communications under the FWA, and therefore her motion for temporary reinstatement is denied.**

The FWA provides that a public employee who is discharged for engaging in an activity protected by the statute can—pending the outcome of their civil complaint—seek temporary reinstatement to their former position or an equivalent position. Fla. Stat. § 112.3187(9)(f). In relevant part, the statute provides that a public employee is entitled to temporary reinstatement if they:

> complain[] of being discharged in retaliation for a protected disclosure and if a court of competent jurisdiction . . . determines that the disclosure was not made in bad faith or for a wrongful purpose or occurred after an agency's initiation of a personnel action against the employee which includes documentation of the employee's violation of a disciplinary standard or performance deficiency.

Id. To summarize, a public employee seeking temporary reinstatement must show three elements: "1) prior to termination the employee made a disclosure protected by the statute; 2) the employee was discharged; and 3) the disclosure was not made in bad faith or for a wrongful purpose, and did not occur after an agency's personnel

5

action against the employee." State, Dep't of Transp. v. Fla. Comm'n on Hum. Rels., 842 So. 2d 253, 255 (Fla. 1st DCA 2003) (citing Lindamood v. Off. of State Att'y, Ninth Jud. Cir. of Fla., 731 So. 2d 829, 831 (Fla. 5th DCA 1999)).

The elements of temporary reinstatement do not resemble the elements of a preliminary injunction, and that is by design; the FWA specifically distinguishes injunctions from temporary reinstatement. See Marchetti v. Sch. Bd. of Broward Cnty., 117 So. 3d 811, 814 (Fla. 4th DCA 2013). "To qualify for relief under subsection 112.3187(9)(f), a plaintiff is required only to make the showing required under the statute . . . ." Id. (emphasis added).

The first requirement of section 112.3187(9)(f) is that the employee must demonstrate, at least preliminarily, that they made a protected disclosure. A disclosure protected by the FWA must communicate one of two things:

> (a) Any violation or suspected violation of any federal, state, or local law, rule, or regulation committed by an employee or agent of an agency or independent contractor which creates and presents a substantial and specific danger to the public's health, safety, or welfare.
>
> (b) Any act or suspected act of gross mismanagement, malfeasance, misfeasance, gross waste of public funds, suspected or actual Medicaid fraud or abuse, or gross neglect of duty committed by an employee or agent of an agency or independent contractor.

Fla. Stat. § 112.3187(5). But an employee cannot obtain temporary reinstatement based on "vague and conclusory allegations" of a protected disclosure. Broward Cnty. Sheriff's Off. v. Hamby, 300 So. 3d 213, 216 (Fla. 4th DCA 2020) (collecting cases and quashing trial court's order of temporary reinstatement for departing

6

from the essential requirements of law).² At a minimum, the employee must provide "specific factual details" or make a "sufficient evidentiary showing" from which a court can discern whether the employee made one of the two types of communications protected by the FWA. Id. at 217.

Ms. Moise's complaint and motion for temporary reinstatement identify three protected communications made on: (1) October 31, 2019; (2) November 3, 2019; and (3) December 5, 2019. (Doc. 1 at ¶¶16–17; Doc. 16 at ¶¶ 9–10.) Ms. Moise characterizes each communication as a "signed, written complaint" about three issues: (1) the School Board "not completing legally required behavioral threat assessments"; (2) Corkscrew Middle School not having a "full-time behavioralist on staff as required"; and (3) Corkscrew Middle School being "unsafe" for Ms. Moise if she had to supervise the student who attacked her. (Id.) The last issue—according to Ms. Moise—necessitated an "accommodation of not having to be in the presence of the student," which she claims to have requested in the November 3 and December 5 communications. (Id.) Ms. Moise also claims that her communications blew the whistle on the School Board's supposed noncompliance with the Rehabilitation Act of 1973 (29 U.S.C. §§ 701-796), the Individuals with Disabilities

---

² In fairness, Hamby was decided one day after the School Board filed its opposition to the motion for temporary reinstatement in this case. But the cases collected in Hamby demonstrate that Florida courts demanded some specificity before Hamby was decided. See, e.g., Hatfield v. N. Broward Hosp. Dist., 277 So. 3d 121, 123 (Fla. 4th DCA 2019) (affirming denial of temporary reinstatement where employee claimed she was fired as retaliation for her grand jury testimony but refused to disclose what she testified about).

7

Act (20 U.S.C. §§ 1400–50), and the Marjorie Stoneman Douglas High School Public Safety Act (Ch. 2018-3, § 24, Laws of Fla.). (Id.)

The School Board has provided the Court with the communications that Ms. Moise claims were protected: (1) the October 31 Email, (2) the November 3 Email, and (3) the Board Policy Narrative. (Doc. 21-1, Ex. 1–3.) Ms. Moise does not dispute that these are the communications she referenced in her complaint and motion.

The October 31 Email and November 3 Email do not appear to be protected communications under the FWA. The emails do not read like "complaints," let alone "signed, written complaints," as Ms. Moise describes them. In the October 31 Email, Ms. Moise wrote that the behavioral threat assessment for the student who attacked her is "99% filled out" and asked if "we need to add anything there." (Doc. 21-1, Ex. 2.) This seems to contradict her allegation that no "legally required behavioral threat assessment" was done. In the November 3 Email, Ms. Moise expresses her view that the student is a danger, and that she is "unsure of what the plan is" for the student since she has been gone. (Id. at 3.) Neither email refers to any violation of law or gross mismanagement. At this stage, Ms. Moise has not provided the Court with "specific factual details" or made a "sufficient evidentiary showing" of how these seemingly innocuous emails entitle her to whistleblower protection. Hamby, 300 So. 3d at 216; see also Castro v. Sch. Bd. of Manatee Cnty., 903 F. Supp. 2d 1290, 1303 (M.D. Fla. 2012) (finding that emails which "sought guidance" and "posed questions" were not protected under the FWA).

8

The Board Policy Narrative likewise does not appear to be a protected communication, at least at this point.  Apart from a cross-reference to the October 31 Email (which has already been discussed), the Board Policy Narrative does not provide that the School Board failed to complete a "legally required behavioral threat assessment."  While Ms. Moise claims to have blown the whistle on the school's lack of a "full-time behavioralist on staff as required," the Board Policy Narrative provides that Ms. Moise was "<u>not sure</u> if we had a behavioral specialist" as of November 5, 2020.  (<u>Id.</u>, Ex. 1) (emphasis added).  Later entries refer to a "behavioral specialist," implying that such a person may have been working at the school all along.  (<u>Id.</u>)  The Board Policy Narrative's concluding paragraph accuses the School Board of failing to take "appropriate safety measures," but the "11/20" entry is consistent with what Principal Smith told Ms. Moise: she may have to interact with the problematic student <u>when she is the only administrator at the school</u>, but she could ask the youth resource deputy to accompany her for safety.  (Id., Ex. 4.)  Nothing in the Board Policy Narrative suggests that the School Board's approach was illegal, let alone violated three different statutes.

On the face of things, it appears Ms. Moise believed that the School Board's measures were not "appropriate" because she preferred different solutions: either a total firewall between herself and the student, or a transfer to another assistant-principal position at a different school.  But expressing frustration with the School Board's approach is not the same as reporting illegal activity or gross mismanagement under the FWA.  See <u>Trzcinka v. Ramirez</u>, No. 6:15-cv-1055-Orl-

9

31DCI, 2016 WL 6524411, at *3 (M.D. Fla. Nov. 3, 2016) (holding that an email to human resources "express[ing] frustration concerning the lack of better paying opportunities" was not a protected disclosure under the FWA); cf. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) ("We are not in the business of adjudging whether employment decisions are prudent or fair.").

At bottom, none of Ms. Moise's communications clarify the foundational questions of her FWA claim: (1) what illegal activity did Ms. Moise blow the whistle on, and (2) why was it illegal?  And while the Court does not expect Ms. Moise to prove the merits of her case at the inception of litigation, it does expect her to provide enough specific information for the Court to infer—at least initially—that she made any kind of protected communication to trigger the reinstatement provision of the FWA.  Hamby, 300 So. 3d at 216.

Accordingly, Ms. Moise's motion for temporary reinstatement is denied.

## II.     Ms. Moise Was Discharged from Her Employment.

Although the Court has held that Ms. Moise failed to make the requisite showing that any of her communications were "protected" under the reinstatement provision of the FWA, the Court nevertheless explains why it has not adopted the R&R's recommendation that Ms. Moise was not "discharged" from her employment. As explained earlier, a person seeking temporary reinstatement under the FWA must show that they were "discharged."  § 112.3187(9)(f); Dep't of Transp., 842 So. 2d at 255 (citing Lindamood, 731 So. 2d at 831).  The R&R suggests that Ms. Moise's "refusal to continue working in her position or accept the [School District's] proposed transfer's does not amount to being discharged within the meaning of the

10

FWA's reinstatement provision." (Doc. 23 at 11.) To support its conclusion that Ms. Moise was not "discharged" within the meaning of the statute, the R&R principally relied on two cases: Metro. Dade Cnty. v. Milton, 707 So. 2d 913 (Fla. 3d DCA 1998), and Luster v. W. Palm Beach Hous. Auth., 801 So. 2d 122 (Fla. 4th DCA 2001). But, unlike the employees in Milton and Luster, Ms. Moise was unquestionably discharged from her employment.

In Milton, an employee of the Department of Corrections and Rehabilitation of Metropolitan Dade County alleged that she was "demot[ed] to lieutenant allegedly in retaliation for her disclosures concerning defendants." 707 So. 2d at 914. The trial court temporarily reinstated the employee to her former position under section 112.3187(9)(f). Id. The Third DCA reversed the reinstatement and held, consistent with the plain language of the statute, that the FWA's temporary reinstatement provision applies only to employees who complain of being discharged. Id. at 915. In other words, the Third DCA held that a demotion is not a discharge. Milton is therefore distinguishable from this case because Ms. Moise is complaining that she was discharged—not demoted—for her whistleblowing.

Similarly, in Luster, an employee of the West Palm Beach Housing Authority alleged that she was terminated for reporting regulatory violations to the Federal Housing and Urban Development Agency. 801 So. 2d. at 123. According to the employee, her employer decided to "reorganize" shortly after she reported the violations, and the department where she worked was eliminated during the reorganization. Id. The employee was apparently offered "another position at the

11

same salary." Id.  The parties disagreed on whether the employee accepted the position or not, but the employee claimed that she was not given the position despite accepting it and was later terminated when her department closed.  Id.  The trial court denied the employee's motion for temporary reinstatement, and the Fourth DCA affirmed.  Id. at 124.  In support of its holding, the Fourth DCA explained:

> Where an employee has been simply transferred or demoted, there is no statutory right to temporary reinstatement.  See Metro. Dade County v. Milton, 707 So. 2d 913, 914–15 (Fla. 3d DCA 1998).  In this case, the trial court could have concluded that, at most, appellant had been transferred but refused the position offered.  Thus, she was not discharged.  She had a position with appellee and refused to accept it. . . .
>
> While appellant maintains that she did accept the position but was then not placed in it, this was a factual dispute for the trial court to resolve.  As it is, the evidence supports the trial court's denial of the temporary reinstatement.

Id. at 123–24 (emphasis added).  Stated differently, the Luster court's holding was based on its deference to a perceived factual finding by the trial court: the employee was not discharged.  Rather, as the trial court in Luster apparently found, the employee refused to accept an alternative job after hers was phased out due to a "reorganization."  Under this assumption, it is easy to see why the Fourth DCA affirmed the trial court's ruling.  Nobody was discharged; the employee simply refused to accept alternative employment after her job ceased to exist.

Here, the parties do not dispute that Ms. Moise was discharged when the School District terminated her contract.  (Doc. 21-1 at ¶ 23.)  While the parties may disagree on why she was discharged, this disagreement is not relevant to section

12

112.3187(9)(f), which simply requires the fact of a discharge.  See Dep't of Transp., 842 So. 2d at 255 (citing Lindamood, 731 So. 2d at 831).

It is true that Ms. Moise stopped coming to work after November 20, 2020, and that she turned down alternative positions.  But none of this happened because her job was "reorganized" out of existence (which would have obviated the need to terminate her contract).  According to Ms. Moise, she stopped reporting to work because the School Board broke the law by not accommodating her safety concerns, despite her blowing the whistle on the School Board's lawbreaking through "signed, written complaints."  The Court has already explained why Ms. Moise's allegations of lawbreaking and whistleblowing are not specific enough to entitle her to temporary reinstatement, and therefore her motion must be denied.  But the fact remains that the School Board terminated her contract, which is a "discharge" under the FWA.  Accordingly, the Court adopts the recommended holding of the R&R without adopting its reasoning.

## CONCLUSION

For the reasons above, it is **ORDERED**:

1. The Report and Recommendation is **ADOPTED IN PART**.
2. Ms. Moise's motion for temporary reinstatement (Doc. 16) is **DENIED.**

**ORDERED** in Fort Myers, Florida, on March 16, 2021.

**JOHN L. BADALAMENTI**
**UNITED STATES DISTRICT JUDGE**

13